UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GMAC MORTGAGE,

                    Plaintiff,                          16th Circuit Ct

v                                            Case No. 11-1359-CK

DAVID W. KUKUK, CYNTHIA KUKUK and
THE INTERNAL REVENUE SERVICE,            USDC, ED of MI, SD

                    Defendants.

_____/

## NOTICE OF REMOVAL

TO:    The Honorable Judges of the United States
District Court for the Eastern District of
Michigan

Defendant The Internal Revenue Service ("IRS"), petitioner herein, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, hereby removes this action (Case No. 11-1359-CK), which is now pending in Macomb County Circuit Court for the State of Michigan, from said court to the United States District Court for the Eastern District of Michigan, Southern Division. This action is subject to removal because an agency of the United States is sued and federal defenses including, but not limited to, sovereign immunity apply.

The above-entitled action was filed against defendant IRS on or about March 28, 2011; service of process was made upon the United States Attorneys Office in the Western District of Michigan on or about April 19, 2011.  Copies of all process and pleadings served upon petitioner are attached hereto.

For removals of suits covered by 28 U.S.C. § 1441 and 1442, removal of the

entire action by the federal government alone is hereby effected without joinder of any

of the other parties in the Notice of Removal.  *See* 14C *Wright, Miller & Cooper, Federal*

*Practice and Procedure: Jurisdiction 3d, §* 3727 at 166-68 & nn. 74 & 75; 16 *Moore's*

*Federal Practice, §§ 107.15*[1][b][v] at 107-122.7; 107.15[1][b][iii] at 107-122.3 & n.26;

107.15[1][b][i] at 107-117;  *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984).

     WHEREFORE, Macomb County Circuit Court No. 11-1359-CK has been

removed to the United States District Court for the Eastern District of Michigan and this

entire action is now pending in this federal court.

                    Respectfully submitted,

                    BARBARA L. McQUADE
                    United States Attorney

                    s/Julia A. Caroff
                    JULIA A. CAROFF
                    Assistant U.S. Attorney
                    211 West Fort Street, Suite 2001
                    Detroit, MI  48226-3211
                    Phone: (313) 226-9772
                    Email: julia.caroff@usdoj.gov
                    (Pa. Lic. No. 37949)

Dated: May 19, 2011

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of **Notice of Removal** and Certificate of Service

has this 19th day of May, 2011, been made upon the following, by placing same in an

envelope, and depositing said envelope in a United States Postal receptacle at Detroit,

Michigan addressed to:

TO:    Stuart A. Best
       Weltman, Weinberg & Reis, LPA
       Attorneys for Plaintiff
       2155 Butterfield, Ste. 200-S
       Troy, Michigan 48084

       David W. Kukuk
       In Pro Per Defendant
       58691 North Avenue
       Ray, MI 48096

       Cynthia Kukuk
       In Pro Per Defendant
       58691 North Avenue
       Ray, MI 48096

s/Julia A. Caroff
JULIA A. CAROFF
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI  48226-3211
Phone: (313) 226-9772
Email: julia.caroff@usdoj.gov
(Pa. Lic. No. 37949)

-3-

STATE OF MICHIGAN
IN THE 16th CIRCUIT COURT

GMAC MORTGAGE,

                              Plaintiff,                    16th Circuit Ct
v                                                           Case No. 11-1359-CK

DAVID W. KUKUK, CYNTHIA KUKUK and
THE INTERNAL REVENUE SERVICE,

                              Defendants.
_____/

### NOTICE OF FILING NOTICE OF REMOVAL

TO:   Clerk of the Court
      16th Circuit Court
      40 N. Main Street
      Mt. Clemens, MI 48043

      Stuart A. Best
      Weltman, Weinberg & Reis, LPA
      Attorneys for Plaintiff
      2155 Butterfield, Ste. 200-S
      Troy, Michigan 48084

      David W. Kukuk
      In Pro Per Defendant
      58691 North Avenue
      Ray, MI 48096

      Cynthia Kukuk
      In Pro Per Defendant
      58691 North Avenue
      Ray, MI 48096

      PLEASE TAKE NOTICE that on *Thursday, May 19, 2011*, Defendant The

Internal Revenue Service ("IRS") filed in the office of the Clerk of the United States

District Court for the Eastern District of Michigan, Southern Division, at Detroit,

Michigan, a Notice of Removal of the above-entitled cause of action to said United

States District Court.  A copy of the Notice of Removal with attachments is attached

hereto.

Pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, this case now stands removed to

federal court.

Respectfully submitted,

BARBARA L. McQUADE (P45423)
United States Attorney

s/Julia A. Caroff
JULIA A. CAROFF
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI  48226-3211
Phone: (313) 226-9772
Email: julia.caroff@usdoj.gov
(Pa. Lic. No. 37949)

Dated: May 19, 2011

2

## CERTIFICATE OF SERVICE

It is hereby certified that service of **Notice of Filing Notice of Removal** and Certificate of Service has this 19th day of May, 2011, been made upon the following by placing same in a postage-paid envelope and depositing said envelope in a United States Postal receptacle at Detroit, Michigan addressed:

TO:  Clerk of the Court
     16th Circuit Court
     40 N. Main Street
     Mt. Clemens, MI 48043

     Stuart A. Best
     Weltman, Weinberg & Reis, LPA
     Attorneys for Plaintiff
     2155 Butterfield, Ste. 200-S
     Troy, Michigan 48084

     David W. Kukuk
     In Pro Per Defendant
     58691 North Avenue
     Ray, MI 48096

     Cynthia Kukuk
     In Pro Per Defendant
     58691 North Avenue
     Ray, MI 48096

Jennifer Bielecki, Paralegal Specialist
United States Attorney's Office

3

| Approved, SCAO | | Original - Court | | 2nd copy - Plaintiff |
|---|---|---|---|---|
| | | 1st copy - Defendant | | 3rd copy - Return |

| STATE OF MICHIGAN JUDICIAL DISTRICT 16TH CIRCUIT JUDICIAL CIRCUIT COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO. 11-1357 CK |
|---|---|---|

| Court address 40 N. MAIN ST. MT. CLEMENS, MI 48043 | Court telephone no. 586-469-5351 |
|---|---|

| Plaintiff's name(s), address(es), and telephone no(s). GMAC MORTGAGE, LLC c/o Attorney | | Defendant's name(s), address(es), and telephone no(s). DAVID W KUKUK 56691 NORTH AVENUE RAY, MI 48096 |
|---|---|---|
| | v | CYNTHIA KUKUK 56691 NORTH AVENUE RAY, MI 48096 |
| Plaintiff's attorney, bar no., address, and telephone no. Woltman, Weinberg & Reis Co. L.P.A. Stuart A. Best,P40744 2155 BUTTERFIELD DR, SUITE Troy, MI 48084 (248) 362-6100 | | INTERNAL REVENUE SERVICE ,  99999 |

**SUMMONS**   **NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 3/28/11 | This summons expires 6/27/11 | Court clerk Carmella Sabaugh |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) 1100 VIRGINIA FORT WASHINGTON | Defendant(s) residence (include city, township, or village) 56691 NORTH AVENUE RAY, MI 48096 |
|---|---|
| Place where action arose or business conducted MACOMB COUNTY | |

| Date March 08, 2011 | Signature of attorney/plaintiff Stuart A. Best,P40744 |
|---|---|

03908102 L E Det STL

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/08)  **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

**DEFENDANT**

wwr#08908102

STATE OF MICHIGAN

IN THE 16th CIRCUIT COURT FOR THE COUNTY OF MACOMB

GMAC MORTGAGE,

    Plaintiff,

vs.

DAVID W. KUKUK, CYNTHIA KUKUK and
THE INTERNAL REVENUE SERVICE.

    Defendant.

Case No. 11- *1359* - CK
HON.

CARETTI
P-31357

RECEIVED

MAR 2 8 2011

CARMELLA SABAUGH
MACOMB COUNTY CLERK

| | |
|---|---|
| **WELTMAN, WEINBERG & REIS, LPA**<br>**By:    STUART A. BEST (P40744)**<br>Attorney for GMAC Mortgage<br>2155 Butterfield, Ste. 200-S<br>Troy, Michigan 48084<br>(248) 362-6100 | **DAVID W. KUKUK and**<br>**CYNTHIA KUKUK**<br>In Pro Per Defendants<br>58691 North Avenue<br>Ray, Michigan 48096 |

There is no other pending or resolved civil action arising of the same transaction or occurrence at issue in this Complaint.

STUART A. BEST (P40744)

*COMPLAINT*

NOW COMES, Plaintiff, GMAC MORTGAGE, by and through its counsel Weltman, Weinberg & Reis, Co. L.P.A and for its Complaint against the Defendants, states as follows:

    1.    This action involves real property located within the County of Macomb, State of Michigan, to wit:

SEE ATTACHED LEGAL DESCRIPTION

    2.    That the jurisdiction and venue are proper within this Court.

- 1 -

## FACTS

3.    That Defendant, David W. Kukuk applied for a loan with GMAC Mortgage, LLC f/k/a GMA Mortgage Corporation on or about April 9, 2007 which was granted, copy attached hereto as **Exhibit A,** (That exhibit is going to be the secondary exhibit loan) in the amount of $103,700.00.

4.    That as a condition of said Secondary Mortgage loan a mortgage was to be recorded against the Defendant's real property located at 58691 North Avenue, Ray, Michigan 48096.

5.    That said property was vested in title and titled to David W. Kukuk and Cynthia M. Kukuk at all relevant times hereto.

6.    That Defendants', David and Cynthia Kukuk, husband and wife executed a mortgage on April 9, 2007, copy of which is attached hereto as **Exhibit B**, securing the Secondary Mortgage loan obligation as set forth on exhibit A.

7.    That said instrument was prepared, completed and fully executed by the Defendant, properly and completely notarized as required by Michigan law.

8.    That said document was returned to Plaintiff for purposes of completion and recording.

9.    That Plaintiff issued a credit-line to Defendant, David W. Kukuk and relies upon the execution of the Secondary Mortgage loan document as well as the mortgage as set forth in exhibits A and B.

10.    That a default has occurred in the payments as required by the Secondary Mortgage loan obligation.

wwr#08908102

11.     That upon Notice of Default, Plaintiff obtained a title search of the real property which indicated that apparently the mortgage is not of record within the County of Macomb.

12.     That the Defendant, Internal Revenue Service potentially holds a lien against the property which is the subject of this action and is named thereto in that its rights maybe affected hereby.

13.     That upon information and belief the Internal Revenue Service has attempted to record a Notice of Federal Tax Lien which may be considered a lien against the property which is the subject to this action.

## COUNT I
## DECLARATORY ACTION

14.     Defendant incorporates and reaffirms each and every allegation contained in paragraphs 1 through 13 as though fully set forth herein.

15.     That Plaintiff and Defendants David and Cynthia Kukuk intended for Plaintiff, GMAC Mortgage to be a first mortgage lien holder as to the real property which is subject to this action.

16.     That Plaintiff's mortgage, attached hereto as exhibit B, is a true and best copy of the document as executed in that the original, after diligent search, can not be located.

WHEREFORE, Plaintiff, GMAC Mortgage, respectfully requests this Court to enter an Order declaring that the copy of the mortgage as attached hereto as exhibit B, be recorded against the real property and shall be considered for all purposes a true and original copy of the true and original mortgage as a first mortgage lien against the real property which is the subject of this action.

wwr#08908102

a.   Defendant shall have leave in which to have caused a copy of an Order from this Court setting forth that the attached exhibit B is a true original copy of the fully executed mortgage.

b.   That said mortgage is a first mortgage lien against the real property.

c.   That the mortgage as recorded shall have a full force and effect as if it were a true and complete original of the mortgage document and any other relief to which this Court may grant.

WELTMAN, WEINBERG & REIS CO., L.P.A.

By: STUART A. BEST (P40744)
Attorney for Plaintiff
2155 Butterfield Dr., Suite 200-S
Troy, MI  48084
(248) 362-6100

Dated: March 8, 2011

- 4 -

# Exhibit A

Account No.: 5025028 ****

Credit Limit: $103,700.00

## SECONDARY MORTGAGE LOAN

### GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation
### HOME EQUITY LINE OF CREDIT
### AGREEMENT AND DISCLOSURE STATEMENT

1.   **INTRODUCTION.**  In this GMAC Mortgage Home Equity Line of Credit Agreement and Disclosure Statement, as amended and extended, Exhibit A hereto and the Addendum (this "Agreement"), "GMAC" refers to GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation.  "We", "us", "you," your" and "our" refer to the person or persons who sign this Agreement as borrower(s).

GMAC will open a Home Equity Line of Credit account (the "Account") for us when we sign this Agreement.  A mortgage or deed of trust (collectively the "Mortgage") also must be signed so that advances under the Account will be secured by the mortgaged property (the "Property") identified in the Mortgage.  This Agreement and the Mortgage, taken together, are called the "Credit Documents".  By signing, we acknowledge that we have read the Credit Documents and we agree to use the Account on the terms set forth below.

We acknowledge that GMAC has provided us with the home equity brochure published by the Federal Reserve Board and a document entitled "Important Terms of your Home Equity Line of Credit Account" (the "Important Terms Disclosure").  Further, we acknowledge that GMAC has fulfilled all of its promises set forth in the Important Terms Disclosure with respect to providing additional information upon our request.

After giving notice of default, GMAC may end our right to advances under the Account, reduce the Credit Limit and/or demand repayment at once of all amounts outstanding under the Account in the circumstances described in paragraph 12(b).  GMAC may also halt advances or reduce the Credit Limit, under the circumstances and for the period described in paragraph 12(c).

2.   **PROMISE TO PAY.**  We promise to pay GMAC all monies advanced under the Credit Documents, including GMAC's out-of-pocket costs shown as Initial Charges on Exhibit A.  This amount at any time is called the "Earning Balance Outstanding".  We also promise to pay GMAC all FINANCE CHARGES under paragraph 6 and all fees and charges under paragraph 7 ("Special Charges").  This total of accrued Finance Charges and Special Charges at any time is called the "Non-Earning Balance Outstanding".  The sum of the Earning Balance Outstanding and the Non-Earning Balance Outstanding is called the "Total Balance Outstanding".

3.   **OUR INDIVIDUAL LIABILITY.**  GMAC may enforce its rights under this Agreement against any one of us or against all of us.

4.   **USING THE ACCOUNT.**  The term of this Account will consist of a "Borrowing Period" and a "Repayment Period".  During the "Borrowing Period", we may borrow any amounts, up to the Credit Limit shown on the first page of this Agreement.  The "Borrowing Period" begins on the "Trigger Date" and ends on the 10th anniversary of the "Agreement Date".  The "Repayment Period" begins on the day after the 10th anniversary of the "Agreement Date" and will continue until the 15th anniversary of the "Agreement Date".  The "Agreement Date" is date below our signatures on this Agreement or the date the Mortgage was notarized, whichever is later.  The "Trigger Date" is the first day after our right to cancel the Account expires.

During the Borrowing Period we may obtain cash advances and goods by presenting Home Equity checks ("Checks") issued to us by a bank or banks selected by GMAC (the "Check Bank(s)").  Each initial and subsequent Check must be written for at least $250 except for the residents of Alabama and Mississippi, where the initial Check must be at least $2000.  For residents of Kentucky the initial Check must be at least $15,100.  The Check Bank will not cash Checks for us.

Also, GMAC may with its prior approval allow us to obtain from the Check Bank and if the services and/or programs are available:  (a) wire transfers; (b) cashier's checks and/or (c) a credit card for the Account which will allow you to obtain: (i) cash advances and (ii) goods and/or services ("Purchases") from participating merchants and ATMS to the extent permitted by law.

We may not borrow from the Account during the Repayment Period.

GMAC is not responsible if anyone refuses to accept a Check, wire transfer, cashier's check and/or credit card from your Account.

Std Draw/Repay

a) AVAILABLE CREDIT DURING THE BORROWING ...IOD. During the Borrowing Period the Account is a revolving credit line. The maximum amount of credit available to us ("Available Credit") is the Credit Limit less the sum of the amount of all unpaid advances under the Credit Documents and other unpaid fees and charges. Any payment which is applied against the Earning Balance Outstanding increases Available Credit 15 calendar days after the payment is received. There is no Available Credit available to us during the Repayment Period.

(b) ADVANCES. The Check Bank will notify GMAC daily of any Checks, wire transfers, cashier's checks, cash advances and/or Purchases it has paid and GMAC will promptly pay the Check Bank on our behalf for any of your Checks, wire transfers, cashier's checks, cash advances and/or Purchases that it has paid. However, GMAC may elect either to honor or to refuse to honor: (i) any Check, wire transfer or cashier's check which is less than $250, is postdated, improperly completed, presented to the Check Bank more than six months after the Check, wire transfer or cashier's check is dated, or (ii) any Check, wire transfer, cashier's check, cash advance and/or Purchase for an amount which exceeds our Available Credit at the time the Check, wire transfer, cashier's check, cash advance and/or Purchase is presented to the Check Bank (iii) any Check, wire transfer, cashier's check, cash advance and/or Purchase if an Event of Default as defined in Section 12 has occurred, (iv) any Check, wire transfer, cashier's check or cash advance intended to be used in payment of all or part of the amount we owe GMAC on the Account, or (v) any Check, wire transfer, cashier's check, cash advance and/or Purchase which is dated after the Borrowing Period ends.

6.   FINANCE CHARGES.

(a) DAILY RATE. At the end of each day, GMAC will multiply the Earning Balance Outstanding (to get the Earning Balance Outstanding, GMAC takes the beginning balance of the account each day (which includes any Initial Charges 60 days after the Trigger Date, monies previously advanced for Checks, wire transfers, cashier's checks, cash advances and/or Purchases) and adds all monies advanced on that day for Checks, wire transfers, cashier's checks, cash advances and/or Purchases then GMAC subtracts any payments or credits posted as of that day; this gives GMAC the Earnings Balance Outstanding) by a Daily Rate equal to the ANNUAL PERCENTAGE RATE for that day divided by 365 (366 days in a leap year). The result is the FINANCE CHARGE for that day. The sum of these daily FINANCE CHARGES during a monthly billing cycle is the FINANCE CHARGE for the billing cycle.

The ANNUAL PERCENTAGE RATE is based on the value of an index plus a margin and is calculated daily according to the method set forth in the Addendum. The ANNUAL PERCENTAGE RATE is a simple interest rate. The index is the Prime Rate as defined in paragraph 6(c).

In addition, recent Daily Periodic Rates and corresponding ANNUAL PERCENTAGE RATES are shown on the Addendum.

(b) MAXIMUM ANNUAL PERCENTAGE RATE. Notwithstanding any language in this Agreement to the contrary, the ANNUAL PERCENTAGE RATE will never exceed the Maximum Annual Rate shown on the Addendum.

(c) PRIME RATE. The Prime Rate for any date (the "Rate Date") is the "prime rate" (or high point of any range of "prime rates") established for the Rate Date by the financial institutions surveyed by The Wall Street Journal in publishing its "Money Rates" (or any replacement) Table. The Prime Rate for the Rate Date will appear in The Wall Street Journal on its first publication date after the Rate Date. If for any reason no such information is published in The Wall Street Journal for the four consecutive days immediately after the Rate Date, and if the New York Times is then publishing a similar table that only includes the "prime rates" of financial institutions surveyed by The Wall Street Journal immediately prior to such time, GMAC will use the appropriate New York Times table until The Wall Street Journal resumes publishing the necessary information. If neither newspaper publishes such information for the four consecutive days immediately after the Rate Date, GMAC will select a substitute index that produces a similar rate, that is publicly available and that is beyond GMAC's control. We understand that a bank's "prime rate" is just a pricing index and is not necessarily the lowest rate charged by a bank.

(d) VARIABLE RATE. Increases or decreases in the ANNUAL PERCENTAGE RATE and the Daily Rate take effect daily based on changes in the Prime Rate and if provided in the Addendum in the Earning Balance Outstanding. We will not be given any advance notice of changes in these Rates. An increase in these Rates will increase our minimum monthly payment.

(e) WHEN FINANCE CHARGES BEGIN. FINANCE CHARGES on Initial Charges shown on Exhibit A begin 60 days after the Trigger Date. FINANCE CHARGES on any payment except for checks begin on the date GMAC makes payment. FINANCE CHARGES on a Check begin on the date it is presented to the Check Bank. Except for the Initial Charges, there is no grace period when FINANCE CHARGES do not accrue.

(f) COMPLIANCE WITH RATE LIMITS. Notwithstanding any other provision of this Agreement, we will not have to pay any FINANCE CHARGES, Initial Charges or Special Charges higher than permitted by law. If it is finally determined that there would be an overcharge, but for this paragraph 6(f), the charge will be reduced to the maximum allowed by law. The amount of any prior overcharge will be used to reduce the Total Balance Outstanding and the remainder will be refunded to us. No credit or refund will cure or waive any default by us.

2

(g) NATURE OF FINANCE CHARGES.  The ANNUAL PERCENTAGE RATE includes only interest and not other charges.

7.   SPECIAL CHARGES.

(a) LATE CHARGE.

(i) If you are a resident of the *District of Columbia, Florida, Indiana, Iowa, Maine, Massachusetts, Michigan, North Carolina, Ohio, Oklahoma, Rhode Island, South Carolina, West Virginia* or *Wyoming* we will not be required to pay a late charge even if your payment is not made by the due date.

(ii) If you are a resident of *New York* and GMAC does not receive any month's minimum payment within 15 days after the payment due date we will be required to pay a late charge equal to the lesser of $20 or 2% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(iii) If you are a resident *of Idaho, Kansas, Kentucky, Mississippi, Oregon* or *Utah* and GMAC does not receive any month's minimum within 15 days of the payment due date we will be required to pay a late charge equal to the lesser of $20 or 4% of the excess (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(iv) If you are a resident of *Wisconsin* and GMAC does not receive any month's minimum payment within 15 days of the payment due date we must pay a late charge equal to $10.

(v) If you are a resident of *Alabama, Alaska, Connecticut, Delaware, Maryland, Minnesota, Nebraska, Nevada, New Mexico, New Hampshire,* or *Vermont* and GMAC does not receive any month's minimum payment by the due date shown on statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(vi) If you are a resident of *Arizona, California, Colorado* or *Georgia* and GMAC does not receive any month's minimum payment within 10 days of the due date shown on the statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(vii) If you are a resident of *Tennessee* and GMAC does not receive any month's minimum payment within 5 days of the due date shown on the statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(viii) If you are a resident of *Virginia* and GMAC does not receive any month's minimum payment within 7 days of the due date shown on the statement for the month we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(ix) If you are a resident of *Hawaii, Illinois, Missouri, New Jersey, Pennsylvania* or *Washington* and GMAC does not receive any month's minimum payment within 15 days of the payment due date as shown on our statement for that month, we will pay a late charge equal to the lesser of $20 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge

(x) If you are a resident of *Louisiana* and GMAC does not receive any month's minimum payment within 10 days of the payment due date as shown on the statement for that month, you will be required to pay a late charge equal to the lesser of $15 or 5% of the amount of the delinquent minimum payment due.

(xi) If you are a resident of *North Dakota* and GMAC does not receive any month's minimum payment within 15 days of the due date you will pay a late charge equal to the lesser of $15.00 or 5% of the excess of (i) the unpaid amount of such payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(xii) If you are a resident of *Montana* and GMAC does not receive any month's minimum payment by the due date shown on statement for the month we will pay a late charge equal to the lesser of $15 or 5% of the excess of (i) the unpaid amount of such past due payment minus (ii) the sum of any overdue payments from prior months and any unpaid late charge.

(b) ANNUAL FEE.  If you are a resident of *Hawaii, Kansas, Kentucky, Maine, Maryland, Michigan, Missouri, Montana, New Jersey, New York, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, Wyoming, West Virginia* or the *District of Columbia* you will not have to pay an annual fee. If you are a resident of: a. *Illinois* you will pay an annual fee of $ 20.00; b. *Iowa* you will pay an annual fee of $15.00; c. *Louisiana* you will pay an annual fee of $12.00; d. *Florida* you will pay an annual fee of $25.00; e. *Ohio* you will pay an annual fee equal to the lesser of $35.00 or ½% of your available credit on the date the annual fee is charged to your account or f. if you are resident of any other state your annual fee will be $35.00. The annual fee will be billed on the first anniversary of this Agreement, is non-refundable and constitutes a FINANCE CHARGE.

The annual fee will be billed to us each year in the same month this Agreement is signed.  GMAC will waive the annual fee if you accrue at least $100.00 of FINANCE CHARGES in the year immediately preceding the date in which the Annual Fee is charged.

billing ...nents that we request. However, GMAC will not charge han... s costs for items requested due to a billing error inquiry.

8. **PAYMENTS.**

(a) **MINIMUM PAYMENT EACH MONTH.** During the Borrowing and Repayment Periods we agree to pay at least the amount of the minimum payment shown on each monthly billing statement by the payment due date on the statement. To figure the minimum payment during the Borrowing Period for a billing cycle, GMAC will add all FINANCE CHARGES and Special Charges accrued under paragraphs 6 and 7 respectively during the billing cycle and all overdue payments from prior billing cycle. The minimum payment is the lesser of the sum of this amount described immediately above or the Total Balance Outstanding at the end of the billing cycle period. The minimum payment for a billing cycle during the Repayment Period will be the sum of: (i) all FINANCE CHARGES and Special Charges accrued under paragraphs 6 and 7 accrued during the billing cycle; (ii) all overdue payments from prior billing cycles and (iii) the greater of $50.00 or 1.667% of the Earning Balance Outstanding at the end of the Borrowing Period. In addition, we will be required to repay GMAC any excess of the Earning Balance Outstanding over our Credit Limit.

(b) **PREPAYMENT.** We may prepay the Total Balance Outstanding in full or in part at any time without penalty.

(c) **MATURITY DATE.** We understand that making the minimum payment each month during the Borrowing Period will not result in any reduction of the Earning Balance Outstanding. Making the minimum payment each month during the Repayment Period will reduce the Earning Balance Outstanding. Unless we have paid off the Total Balance Outstanding and canceled the Account or GMAC terminates the Account before the end of the Repayment Period (the "Maturity Date") we will pay the remainder of the Total Balance Outstanding in a single payment which may be a balloon payment. See paragraphs 12(b) and 14. The Account will terminate after this final payment.

(d) **APPLICATION OF PAYMENTS.** GMAC will apply our payments first against FINANCE CHARGES and Special Charges from prior billing periods, next against advances in prior billing periods, then against FINANCE CHARGES and Special Charges from the current billing period and finally against advances obtained in the current billing period. Any Payments for Special Charges will be applied in the following order: late charges, if any; annual fees, if any; any handling costs and then to any insurance premiums. However, any time the Earning Balance Outstanding is greater than our Credit Limit, GMAC may elect to apply our payments first against advances outstanding, starting with the oldest advance.

(e) **STATEMENTS CONCERNING PAYMENTS.** GMAC may ignore statements such as "payment in full" on any check (or which accompany any check) which we send in payment of any amount owed by us. GMAC may deposit such check without notifying us and without its deposit being a settlement of the amount owed. Any such check will be applied as described in paragraph 8(d).

9. **MONTHLY STATEMENT.** GMAC will send us a statement for each monthly billing period in which we make a payment on the Account or in which the amount due is $1.00 or more.

10. **SECURITY.** The Mortgage gives GMAC a lien on the Property to the extent of the Total Balance Outstanding at any time and is made a part of this Agreement by reference. The Mortgage describes insurance we must maintain on the Property. Although we may choose the insurance company, GMAC has the right to refuse to accept our choice for reasonable cause.

11. **TRANSFER OF RIGHTS AND DUTIES.** The Account is our personal obligation, and GMAC is relying on us to repay the amounts it advances. We agree not to transfer our credit privileges or our payment duties to another person without GMAC's prior written consent. However, GMAC may transfer its rights and duties at any time with or without notice. Our heirs, successors and assigns shall be bound by all of our duties, and our approved assigns will have all of our rights. GMAC's successors and assigns shall be bound by all of GMAC's duties and will have all of GMAC's rights.

12. **EVENTS OF DEFAULT.**

(a) **NOTICE.** The events set forth in paragraphs 12(b) and 12(c) are Events of Default if and when GMAC gives any person (other than GMAC) who has signed a Credit Document ("Signer") notice of default. We agree to notify GMAC promptly upon the happening of any event that would be an Event of Default.

(b) **TERMINATION EVENTS.** In any of the events described in this paragraph 12(b), GMAC may give notice of default. Upon or after giving such notice, GMAC may permanently end our right to advances under the Account, may reduce our Credit Limit and/or, either immediately or at such later time as GMAC elects, may demand repayment at once of the Total Balance Outstanding.

4

(i)     There has been fraud or material misrepresentation by us in connection with the Account;

(ii)    We have failed to meet the repayment terms of this Agreement for any amount outstanding; or

(iii)   To the extent permitted by law, any action or inaction by you has adversely affected the Property or any right of GMAC in the Property; to the extent permitted by law, this will include, but not be limited to, (or any legal representative or successor of yours) you agreeing to sell, transfer, or assign or selling, transferring or assigning any interest in the Property without the prior written consent of GMAC.

(e) SUSPENSION EVENTS.  In any of the events described in this paragraph 12(c), GMAC may give notice of default. GMAC may freeze advances (not permit us to access our Account for additional advances) or reduce the Credit Limit if any of the events described below occur.  GMAC will notify us if our Account is frozen or if our Credit Limit is reduced.  If the reason for such action no longer exists and we would like our credit privileges reinstated, then it is our responsibility to deliver to GMAC a written request for reinstatement of credit privileges, with evidence that the event(s) causing the suspension have been cured.  We promise that we will include with any request for reinstatement any evidence reasonably necessary to show that the event(s) in question have ended.  If, after reasonable investigation, GMAC agrees that the event(s) resulting in such action no longer exist and that no other conditions that would permit such action currently exist, then GMAC will reinstate our credit privileges.

The following events give rise to these consequences:

(i)   The value of the Property declines significantly below the appraised value of the Property used by GMAC in deciding to open the Account;

(ii)  GMAC reasonably believes that we will be unable to fulfill our repayment obligations under the Account because of a material change in our financial circumstances;

(iii) Signers are in default of any of the following obligations under the Credit Documents, which we agree are material:

(A)     paragraph 12(c) of the Agreement, requiring evidence of the end of an Event of Default;

(B)     paragraph 15(c) of the Agreement, prohibiting conflicting instructions [or court orders];

(C)     paragraph 15(e) of the Agreement, requiring notice of lost or stolen Checks and/or credit cards;

(D)     paragraph 15(g)(ii) of the Agreement, requiring notice of adverse changes in our credit or financial condition or the value of the Property and requiring compliance with reasonable GMAC requests for information;

(E)     paragraph 15(i) of the Agreement, requiring notice of changes in our address, name or employment and notice of death, imprisonment or incompetency;

(F)     paragraph 3 of the Mortgage, prohibiting prior mortgages, deeds of trust, charges and liens on the Property;

(G)     paragraph 4 of the Mortgage, regarding hazard insurance and condemnation;

(H)     paragraph 5 of the Mortgage, regarding maintenance of the Property;

(I)     paragraph 6 of the Mortgage, regarding protecting GMAC's security;

(J)     if applicable, paragraph 1 of the Condominium Rider or Planned Unit Development Rider to the Mortgage, requiring payment of condominium or planned unit development obligations;

(K)     if applicable, paragraph 2 of the Condominium Rider, regarding notice of a lapse of insurance coverage; or

(L)     if applicable, paragraph 4 of the Condominium Rider or Planned Unit Development Rider, prohibiting certain actions without GMAC's consent;

(iv) The Maximum Annual Percentage Rate provided for in paragraph 6(b) is reached; or

(v)  The priority of the Mortgage is adversely affected by government action to the extent that the value of the equity in the Property after liens prior to the Mortgage is less than 120% of the Credit Limit.

(vi) GMAC is prevented by any government action from applying to my Account the Annual Percentage Rate that is provided for in this Agreement.

(vii) GMAC is notified by its regulatory agency that continued advances would constitute an unsafe and unsound practice.

ent right required by applicable law. However, we understand and agree that this paragraph 12 is intended to give GMAC all rights permitted by applicable law.

(e) **RETURN OF CHECKS AND CREDIT CARDS.** Upon the occurrence of an Event of Default as set forth in Paragraph 12(b), we will promptly return all unused Checks and credit cards to GMAC.

(f) **FORECLOSURE.** If we do not repay the Total Balance Outstanding at once when due, GMAC may exercise any right available to it under applicable law, including foreclosure.

**13. AMENDMENT OF AGREEMENT.** We agree that GMAC may amend this Agreement, without any further consent from us, if (a) the amendment is "insignificant" (as defined under applicable federal law) or (b) if the amendment will unequivocally benefit us throughout the remainder of the term of this Agreement. All other amendments to this Agreement shall require a written agreement between GMAC and us.

**14. CANCELLATION BY US.** If we wish to close the Account, we must notify GMAC that we are closing our Account and return all unused Checks and any credit cards. The notice must specify the Account number and an effective date of cancellation. The date of cancellation must be after GMAC receives the Notice. We will be responsible for all Checks signed by us whenever written as well as all credit card cash advances and/or Purchases made by us whenever made, and we will pay GMAC the Total Balance Outstanding on the cancellation date. We will not be released from our duties until this amount is paid. If GMAC receives a check which satisfies the Total Balance Outstanding GMAC may at its sole discretion consider the Account closed.

**15. OTHER PROVISIONS.**

(a) **WAIVER.** We agree that we will not be released from any of our obligations because GMAC releases or takes any additional security for the repayment of amounts owed. GMAC may waive or delay enforcing its rights without limiting its ability to exercise them in the future. Any waiver by GMAC shall be in writing and shall apply only to the extent stated in the writing. No waiver shall be regarded as a waiver of any other event.

(b) **SATISFACTION, COLLECTION AND FORECLOSURE COSTS.** To the extent permitted by law, all satisfaction fees charged by any recording office for canceling the Mortgage will be billed to you, and to the extent permitted by law reasonable out-of-pocket costs (including attorneys' fees) incurred and projected by GMAC in enforcing its rights shall be included as additional indebtedness in any judgment or decree against us.

(c) **JOINT ACCOUNTS; CONFLICTING INSTRUCTIONS.** If more than one person signs this Agreement, then this Account is a joint account and each signer will be individually responsible and liable for the entire account balance. If this is a joint Account, we agree not to give conflicting instructions regarding the Account. Nevertheless, in the absence of a court order, GMAC may comply with a request made by any of us (even if it conflicts with a request made by another one of us) or GMAC may refuse any request. GMAC may also give notice of an Event of Default under paragraph 12(c) if it receives conflicting instructions on the Account. If GMAC receives conflicting instructions, or a court order regarding the Account, it may refuse any request or dishonor any Check or credit card cash advance or Purchase, without notice to any of us.

(d) **STOPPING PAYMENTS.** In order to stop payment on a Check, we must call the telephone number for customer inquiries shown on our most recent monthly billing statement. WHILE GMAC WILL MAKE A GOOD FAITH EFFORT TO STOP PAYMENT, GMAC DOES NOT GUARANTEE THAT PAYMENT ON ANY CHECK WILL IN FACT BE STOPPED.

(e) **LOST OR STOLEN CHECKS AND/OR CREDIT CARDS.** We agree to contact GMAC immediately at the address or telephone number shown on our most recent monthly statement if we learn that any Check and/or credit card has been lost or stolen.

(f) **GOVERNING LAW.** This Agreement will be governed by federal and Michigan law. If any provision is invalid, illegal, or unenforceable, this Agreement will be interpreted as if such provision had never been included. We agree to fully cooperate in the correction and adjustment of any errors in the loan documents if deemed necessary or desirable by GMAC to comply with any law or regulation or to meet the terms and conditions of the loan approval.

(g) **CREDIT INFORMATION.** (i) To the extent permitted by law, GMAC may disclose information about us, our performance under this Agreement, employment, credit, or other information: (1) to credit reporting agencies, (2) to affiliates of GMAC unless you (if there is more than one borrower each borrower must notify GMAC to prevent the sharing of that borrower's information with affiliates) notify GMAC at 100 Witmer Road, Horsham, PA 19044-0963 Attention: Home Equity Department that GMAC should not share this information with affiliates (upon receipt of this notice GMAC will stop sharing information with affiliates), (3) if GMAC reasonably believes disclosure necessary to ensure our compliance with the Credit Documents, or (4) if we give GMAC our written permission. We authorize GMAC to obtain reports from others (such as employers, creditors, lenders and credit reporting agencies) from time to time bearing on our credit status. This applies to each of us if this is a joint Account.

(ii) We agree to notify GMAC promptly if there is any material adverse change in our credit or financial condition or the value of the Property. We also agree to provide GMAC with any updated information GMAC reasonably requests from time to time concerning our credit or financial condition or the value of the Property.

(h) **TIME OF THE ESSENCE.** Time is of the essence in this Agreement.

(i) **CHANGE OF ADDRESS, ETC.** We will give GMAC prompt prior notice of any change in our address, name or employment and we will give GMAC prompt notice if any of us dies by sending GMAC a certified death certificate if it requests one, is imprisoned or becomes legally incompetent.

6

(j)  **NOTICES.** Any GMAC notice shall be hand delivered or sent by first class, registered or certified mail to the address of the Property or such other address specified by the addressee in a written notice given to GMAC. Any GMAC notice shall be considered given on the day it is deposited in the U.S. mail or is hand-delivered.

Any notice from us must be mailed to GMAC by first class, registered or certified mail to the address shown on our most recent monthly statement or to such other address specified by GMAC in a written notice given to us. Any such notice shall be considered given on the day it is received by GMAC.

(k)  **FAILURE TO MAKE ADVANCE.** We agree that GMAC will not be responsible if we cannot obtain an advance because of any cause beyond its reasonable control or if anyone refuses to accept a Check, wire transfer, cashier check and/or credit card.

(l)  **COPIES, ETC.** If GMAC sues to enforce this Agreement, GMAC may use a copy, microfilm, or microfiche of any Check, monthly statement or other document to prove what we owe GMAC. The copy, microfilm or microfiche can be used just like the original document.

(m)  **CREDIT BALANCES.** GMAC will not pay us interest on any credit balances.

(n)  **ANNUAL STATEMENT.** Within ten days after receipt of a written request from us, GMAC will deliver to us once per year and without charge a statement showing the date and amount of all payments on the account for the immediately preceding 12 month period, and the Total Balance Outstanding.

(o)  **USE OF FUNDS.** We agree to use all funds advanced to us for personal, family or household purposes.

(p)  **TAXES.** If taxes on mortgages or the debts they secure increase in any way after the date of the Mortgage, we shall pay the full amount of any such increase.

(q)  **TAX ADVICE.** We should consult a tax advisor regarding the deductibility of interest and charges under the Account.

*(THIS SPACE INTENTIONALLY LEFT BLANK)*

You have the right to be represented by an attorney of your own choosing at the time this Agreement is signed.

**Read the entire Agreement before you sign.**

**You are entitled to a copy of this Agreement.**

**You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with the law.**

**Do not sign this Agreement if it contains blank spaces. All spaces should be completed before you sign.**

**This Loan Agreement is secured by a mortgage on your real property. Default in the payment of this loan may result in loss of the property securing this loan.**

David W. Kukuk
_____
Borrower Name

_____
Borrower Signature

58691 North Avenue

Ray, Michigan 48096
_____
Address

April 9, 2007
_____
Date

\* \* \* \*

_____
Borrower Name

_____
Borrower Signature

_____
Address

April 9, 2007
_____
Date

_____
Borrower Name

_____
Borrower Signature

_____
Address

April 9, 2007
_____
Date

\* \* \* \*

_____
Borrower Name

_____
Borrower Signature

_____
Address

April 9, 2007
_____
Date

8

As used in the following notice, the terms "we", "us" and "our" refer to GMAC and the terms "you" and "your" refer to the person(s) who signs the Agreement as borrower(s).

## FAIR CREDIT BILLING ACT DISCLOSURES

**Your Billing Rights**
**Keep this Notice for Future Use**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected .
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**EXHIBIT A**

| Initial Charge (Settlement Costs) | Amount | |
|---|---|---|
| Appraisal Fee | $ | 0.00 |
| Title Insurance and Endorsement Fee(1) | $ | 0.00 |
| Title Search Fee(2) | $ | 0.00 |
| Recording Fee(1) | $ | 0.00 |
| Closing Agent Fee | $ | 0.00 |
| Flood Certificate | $ | 0.00 |
| Attorney Fee | $ | 0.00 |
| Survey | $ | 0.00 |
| State Tax/Stamps | $ | 0.00 |
| Intangible Tax | $ | 0.00 |
| City/County Tax/Stamps | $ | 0.00 |
| TOTAL | $ | 0.00 |

(1) Estimated. Subject to adjustment when actual out-of-pocket costs determined.

(2) Includes title examination.

10

Account No.: 5025028

## ADDENDUM TO AGREEMENT

THIS ADDENDUM TO AGREEMENT *(this "Addendum")* modifies and supplements the GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation Home Equity Line of Credit Agreement and Federal Truth-in-Lending Disclosure Statement (the "Agreement") that is being executed along with this Addendum. All terms defined in the Agreement have the same meanings in this Addendum. To the extent of any inconsistency with the Agreement, this Addendum shall control.

1. **DISCOUNTED VARIABLE RATE.** You will receive a discount during the first 3 months of the Borrowing Period, the variable ANNUAL PERCENTAGE RATE for any day will be a simple variable interest rate which equals the Prime Rate for that day minus 0.50%. As of the day you sign the Agreement, the Daily Rate and corresponding variable ANNUAL PERCENTAGE RATE is estimated to be as follows:

| Daily Rate | Corresponding ANNUAL PERCENTAGE RATE |
|---|---|
| 0.02123% | 7.75% |

During the term of the discount this rate may vary. Unless otherwise agreed to by GMAC this discounted rate is available only for first time home equity credit line borrowers.

2. **REGULAR RATE.** When the discount rate is not in effect the ANNUAL PERCENTAGE RATE equals (i) the Prime Rate plus a margin of 2.250% for any day in which the Earning Balance Outstanding at the end of the day is $25,000 or less; (ii) the Prime Rate plus a margin of 2.000% for any day in which the Earning Balance Outstanding at the end of the day is greater than $25,000 but $50,000 or less; and (iii) the Prime Rate plus a margin of 1.750% for any day in which the Earning Balance Outstanding at the end of the day is more than $50,000. If the discounted rate was not in effect, the Daily Rate and corresponding variable ANNUAL PERCENTAGE RATE as of the day you sign this Agreement is estimated be as follows:

| Outstanding Principal Balance | Daily Rate | Corresponding ANNUAL PERCENTAGE RATE |
|---|---|---|
| $25,000 or less | 0.02877% | 10.500% |
| $25,001 to $50,000 | 0.02808% | 10.250% |
| More than $50,000 | 0.0274% | 10.000% |

During the term of your Agreement these rates may vary. Also, these rates apply to your entire Earnings Balance Outstanding. For example, based on the above rates if you have an Earnings Balance Outstanding of $110,000, the ANNUAL PERCENTAGE RATE for the entire $110,000 will be 10.000%.

The maximum ANNUAL PERCENTAGE RATE that can apply during the term of the loan is the lesser of: (a) ten percentage points (10.00%) over the index value the day before your Account is opened; or (b) the maximum percentage rate permitted by applicable law.

70% CLTV Standalone

# Exhibit B



MIN 1000375-8250502502-5

# MORTGAGE

## THIS MORTGAGE SECURES OBLIGATORY FUTURE ADVANCES

**THIS MORTGAGE,** as amended and extended *(this "Mortgage")* is signed to secure advances under a GMAC Home Equity Line of Credit agreement *(the "Agreement");* it is dated as of April 9, 2007, and is made by David W. Kukuk And Cynthia M. Kukuk, Husband And Wife who reside(s) at 58691 North Avenue , Ray, Michigan 48096, as mortgagor(s). This Mortgage is given to the Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. MERS is the nominee for Lender, GMAC Mortgage, LLC, a Delaware limited liability company f/k/a GMAC Mortgage Corporation ("GMAC"), located at 100 Witmer Road, Horsham, PA 19044-0963, as hereinafter defined and GMAC's successors and assigns. MERS is organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, telephone (888)679-MERS.

Throughout this Mortgage, "we", "us" and "our" refer to mortgagor(s). "GMAC" refers to GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation or its assigns. The "Account" refers to the Home Equity line of credit account established by GMAC under the Agreement. "Borrower" refers to each person who signs the Agreement as borrower. The Agreement and this Mortgage, taken together, are called the "Credit Documents." "Signer" refers to any person (other than GMAC) who has signed a Credit Document.

## DESCRIPTION OF SECURITY

By signing this Mortgage, we mortgage to MERS acting solely as a nominee for GMAC, subject to the terms of this Mortgage, (a) the real estate located at 58691 North Avenue  Ray, County of Macomb, State of Michigan 48096, more fully described in Schedule A; (b) all buildings and other structures on the property; (c) all rights we may have in any road, alley, easement or license regarding the property or in any mineral, oil, gas or water which is part of the property; (d) all rents and royalties from the property; (e) all proceeds of any insurance on the property and all refunds of premiums on such insurance; (f) all proceeds of any taking (or threatened taking) of the property by any governmental authority *("condemnation");* and (g) all fixtures on the property at any time *(collectively, the "Property").*

The Property includes all rights and interests which we now have or which we may acquire in the future.  For example, if the security mortgaged under this Mortgage is a leasehold estate and we subsequently acquire fee title to the Property, the rights and interests granted to MERS acting solely as a nominee for GMAC by this Mortgage will include the fee title that we acquire.  This Mortgage is also a Security Agreement under the Michigan Uniform Commercial Code and we hereby grant MERS acting solely as a nominee for GMAC a security interest in the personal property described in (d) through (f) above.

## SECURED OBLIGATIONS

### THIS MORTGAGE SECURES OBLIGATORY FUTURE ADVANCES.

We have signed this Mortgage to secure payment to GMAC of up to $103,700.00, plus FINANCE CHARGES and any other amounts due GMAC under the Agreement *(the "Total Balance Outstanding")* and to secure performance by Borrower under the Agreement and our performance of the covenants of this Mortgage *(collectively, the "Secured Obligations").*

## PRIORITY OF ADVANCES

The lien of this Mortgage will attach on the date this Mortgage is recorded.  The indebtedness evidenced by the Credit Documents is a revolving indebtedness.  The Credit Documents provide that amounts may be advanced, repaid and readvanced from time to time in accordance with the terms and provisions of the Agreement.  Accordingly, the aggregate advances during the term of the Credit Documents may exceed the Credit Limit.  However, the Total Balance Outstanding less FINANCE CHARGES at any time *(the "Earning Balance Outstanding")* shall never exceed the Credit Limit, except for advances made to protect the lien of this Mortgage.  We agree that the lien and security title of this Mortgage shall not be deemed released or extinguished by operation of law or implied intent of the parties if the Total Balance Outstanding is zero as of the date of this Mortgage or is from time to time reduced to zero by payments made to GMAC.

Account No.: 5025028 ****
Branch No.: 996
Loan Product: 70% CLTV Standalone

This Instrument Prepared By:
Joann Muredda
GMAC Mortgage
4 Walnut Grove Drive,
Horsham, PA 19044

**REPRESENTATIONS AND DUTIES**

We promise that, except for Permitted Liens: (a) we own the Property; (b) we have the right to mortgage the Property to GMAC; and (c) there are no outstanding claims or charges against the Property. The term "Permitted Lien" means (x) any mortgage, deed to secure debt or deed of trust *("security instrument")* disclosed to GMAC by any Signer in applying for the Account, to the extent that the amount secured by such security instrument does not exceed the amount disclosed on such application; and (y) any liens, claims and restrictions of record that do not individually or collectively have a material adverse impact upon GMAC's security, the value of the Property or the Property's current use.

Each of us gives a general warranty of title to GMAC. This means that each of us will be fully responsible for any losses which GMAC suffers because someone has rights in the Property other than Permitted Liens. We promise that we will defend our ownership of the Property against any claims of such right.

We will neither take nor permit any action to partition, subdivide or change the condition of title to all or any part of the Property. We will not amend any Permitted Lien without GMAC's prior written consent.

**CERTAIN PROVISIONS OF THE AGREEMENT**

We understand that GMAC may, under certain circumstances set forth in the Agreement, cancel its obligation to make future advances and/or require repayment at once of the Total Balance Outstanding.

Under the Agreement, FINANCE CHARGES are based on the "prime rate" published in The Wall Street Journal or in certain circumstances the "prime rate" published in The New York Times or a similar index selected by GMAC. The rate of FINANCE CHARGES changes on a daily basis as the index or the amount outstanding under the Agreement increases or decreases. We understand that Borrower will not receive advance notice of such changes.

**PROMISES AND AGREEMENTS**

We agree with GMAC as follows:

**1. TIMELY PAYMENT.** Except as limited by paragraph 10 below, Borrower shall pay when due all sums owed GMAC under the Credit Documents.

**2. APPLICATION OF PAYMENTS.** All payments shall be applied by GMAC as set forth in the Agreement.

**3. MORTGAGES AND DEEDS OF TRUST; CHARGES; LIENS.** We shall make payments when due and perform all our obligations under any mortgage, deed of trust or other security agreement on the Property.

We shall pay or cause to be paid when due all loans, taxes, assessments, charges, fines, impositions and rents of any kind relating to the Property *("Assessments")*. Receipts evidencing such payments shall be delivered to GMAC upon its request. Except for Permitted Liens, we shall not allow any encumbrance, charge or lien on the Property to become prior to this Mortgage.

**4. HAZARD INSURANCE; CONDEMNATION.**

(a) We shall, at our cost, keep all improvements on the Property insured against loss caused by hazards included in the term "extended coverage" or by other hazards GMAC may reasonably specify. Hazard insurance shall be in an amount equal to the lesser of (i) the full replacement cost of the building that is part of the Property or (ii) the amount of this Mortgage plus the total amount of all Permitted Liens; but never less than the amount necessary to satisfy any coinsurance requirement contained in the insurance policy.

We may choose the insurance company, subject to approval by GMAC which may not be unreasonably withheld. All insurance policies and renewals must be in form acceptable to GMAC and must include a standard mortgagee clause in favor of GMAC. GMAC shall have the right to hold the policies and renewals, subject to the terms of any Permitted Liens. If we pay the premiums directly, we shall provide GMAC with all renewal notices and, if requested by GMAC, all receipts for premiums. If policies and renewals are held by any other person, we shall supply copies of them to GMAC within ten calendar days after they are issued.

In the event of loss, we shall give prompt notice to the insurance company and GMAC. GMAC may file a proof of loss if we fail to do so promptly.

(b) The proceeds of any condemnation of the Property shall be paid to GMAC, subject to any Permitted Liens. We shall give GMAC notice of any threatened condemnation and sign all documents required to carry out this paragraph 4. No condemnation settlement may be made without GMAC's prior written approval which shall not be unreasonably withheld.

- 2 -

(c) Subject to the terms of any Permitted Lien, GMAC may elect that the proceeds of any insurance or condemnation (after payment of all reasonable costs, expenses and attorneys' fees paid or incurred by GMAC and us) shall be applied to pay the Secured Obligations, to repair or reconstruct the Property, and/or pay us for our loss. In the event that such proceeds are not used entirely for repair and reconstruction, we shall provide GMAC with a new appraisal or valuation of the Property, conducted by a person or entity and in a form reasonably acceptable to GMAC, unless GMAC waives this requirement in writing. The receipt of proceeds shall not cure or waive any default or notice of default under this Mortgage or invalidate any act done pursuant to such notice.

If the Property is abandoned by us, or if we fail to respond to GMAC in writing within 30 calendar days from the date notice of a proposed insurance or condemnation settlement is given to us, GMAC may settle the claim, collect the proceeds and apply them as set forth above.

If the Property is acquired by GMAC, all of our right, title and interest in and to any insurance or condemnation proceeds shall become the property of GMAC to the extent of the sums secured by this Mortgage.

**5. MAINTENANCE OF THE PROPERTY; LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** We shall: use, improve and maintain the Property in compliance with law; keep the Property in good repair and pay when due all repair costs; prevent waste, impairment and/or deterioration of the Property; and comply with the provisions of any lease of the Property.

If the Property is part of a condominium project or a planned unit development, we shall promptly perform all of our obligations under the governing documents of the project or development.

**6. PROTECTION OF GMAC SECURITY.** We shall appear in and defend any action or proceeding which may affect the security of GMAC under this Mortgage or result in a violation of paragraph 3 above. If such an action is filed, we violate this Mortgage or Borrowers violate the Agreement, then GMAC may disburse funds and do whatever it believes necessary to protect the security of this Mortgage. In doing so, GMAC shall give us notice but it need not make demand or release us from any obligation.

Any amounts paid by GMAC under this paragraph 6, with FINANCE CHARGES at the variable rate in effect under the Agreement, shall be paid by us upon demand. Until paid by us, such amounts are secured by this Mortgage. GMAC is not required to incur any expense or take any action under this Mortgage and no action taken shall release us from any duty.

**7. INSPECTION.** Representatives of GMAC may inspect the Property from time to time. Except in an emergency, GMAC must first give notice specifying reasonable cause for the inspection.

**8. FINANCE CHARGES AFTER END OF ACCOUNT AND/OR JUDGMENT.** To the extent permitted by law, we agree that FINANCE CHARGES after the end of the Account and/or after a judgment is entered shall continue to accrue at the rates and in the manner specified in the Agreement.

**9. OUR CONTINUING DUTIES AND GMAC'S RIGHTS; WAIVERS.** No waiver of any GMAC right under the Credit Documents shall release or limit our liability, Borrower's liability, or that of our successors or Borrower's successors, nor shall any waiver affect the lien or priority of this Mortgage. GMAC shall not be required to start proceedings against any successor or modify payment terms by reason of any demand made by us or any successor.

No GMAC act or failure to act shall waive any right under this Mortgage. All waivers must be in writing and signed by GMAC; they shall apply only to the extent and with respect to the event specified in the writing. Obtaining insurance, or paying taxes, other liens or charges shall not be a waiver of GMAC's right to demand payment at once of the sums secured by this Mortgage in the event of a default under the Credit Documents.

**10. SUCCESSORS AND ASSIGNS; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** This Mortgage shall bind us and our respective successors and permitted assigns for the benefit of GMAC and its successors and assigns. All agreements made by us or any successor are joint and several and may be enforced against each of us or any successor.

Any Signer who does not execute the Agreement (a) is co-signing only to encumber that person's interest in the Property and to release all homestead and/or dower rights, (b) is not personally liable under the Credit Documents, and (c) agrees that GMAC and any Signer may modify either Credit Document, without consent and without modifying the interests of the rest of us under this Mortgage.

**11. NOTICES.** All notices shall be in writing. Except where applicable law requires otherwise:

(a) GMAC notices shall be hand delivered or mailed by first class, registered or certified mail to the address of the Property or to such other address specified by the addressee in a written notice given to GMAC. Any GMAC notice shall be considered given on the day it is deposited in the U.S. mail or is hand-delivered.

(b) Our notices shall be mailed to GMAC by first class, registered or certified mail to the address for such notices specified on our most recent monthly statement under the Agreement or to such other address specified by GMAC in a written notice given to us. Any such notice shall be considered given on the day it is received by GMAC.

**12. GOVERNING LAW.** This Mortgage will be governed by federal and Michigan law. If any provision is invalid, illegal, or unenforceable, this Mortgage shall be interpreted as if such provision had never been included.

**13. COPIES.** We shall receive copies of the Credit Documents at the time they are signed or after this Mortgage is recorded.

**14. EXERCISING REMEDIES.** GMAC may exercise all of the rights and remedies provided by the Credit Documents or law, and any of these rights and remedies may be exercised individually or jointly, once or a number of times.

**15. EVENTS OF DEFAULT.**

(a) The events set forth in paragraph 15(b) are Events of Default if and when GMAC gives any Signer notice of default. We agree to notify GMAC promptly upon the happening of any event that would be an Event of Default under either Credit Document upon the giving of notice by GMAC.

(b) After giving notice of default, GMAC may end the Account and/or demand repayment at once of the Total Balance Outstanding in any of the following events:

(i) There has been fraud or material misrepresentation by any Signer in connection with the Account;

(ii) Borrowers have failed to meet the repayment terms of the Agreement for any amount outstanding; or

(iii) Any action or inaction by any Signer has adversely affected the Property or any right of GMAC in the Property; to the extent permitted by law, this will include, but not be limited to, any Signer (or any legal representative or successor of any Signer) agreeing to sell, transfer or assign or selling, transferring or assigning any interest in the Property, without the prior written consent of GMAC.

(c) Notwithstanding any language in this Mortgage to the contrary, GMAC will not give notice of default unless permitted by applicable law and GMAC will give us any grace period, right to cure and/or reinstatement right required by applicable law. This paragraph 15 is intended to give GMAC all rights permitted by applicable law.

**16. REMEDIES. IF BORROWERS DO NOT REPAY AT ONCE THE TOTAL BALANCE OUTSTANDING WHEN DUE, GMAC MAY EXERCISE ANY REMEDY AVAILABLE TO IT UNDER APPLICABLE LAW, INCLUDING FORECLOSURE.**

**17. FORECLOSURE BY ADVERTISEMENT.** We hereby grant GMAC upon an Event of Default power to sell or cause the sale of the Property at public auction or venue and to convey the Property to the purchaser in the manner provided by law. GMAC may sell the Property without affording us a hearing or giving us actual notice in person. However, GMAC shall publish notice in a local newspaper and post a copy of the notice on the Property.

**18. APPOINTMENT OF RECEIVER.** Upon an Event of a Default or our failure to pay taxes assessed against the Property and/or insurance premiums on the Property (which we agree shall constitute waste), GMAC shall be entitled to the appointment of a receiver if permitted by law.

**19. SATISFACTION OF MORTGAGE.** Upon payment and discharge of all sums secured by this Mortgage and termination of the Account, this Mortgage shall be void and GMAC shall satisfy this Mortgage, file a discharge or release and pay any recording costs.

**20. REQUEST FOR NOTICES.** GMAC requests that copies of notices of default, sale and foreclosure from the holder of any lien which has priority over this Mortgage be sent to GMAC at 100 Witmer Road, Horsham, PA 19044-0963.

**21. EXHIBITS, SCHEDULES AND RIDERS, ETC.** The terms of any Exhibit, Schedule or Rider attached to this Mortgage or executed and recorded with this Mortgage shall be treated as if fully set forth in this Mortgage. All of the terms of the Agreement are made part of this Mortgage.

**22. TIME OF ESSENCE.** Time is of the essence in this Mortgage.

- 4 -

By signing this Mortgage, we agree to all of the above.

WITNESSES:

_David W Kukuk_
Name Printed: _____

_David W Kukuk_
David W. Kukuk
MORTGAGOR

_Cynthia M. Kukuk_
Name Printed: _____

_Cynthia M. Kukuk_
Cynthia M. Kukuk
MORTGAGOR

Name Printed: _____

_____
MORTGAGOR

Name Printed: _____

_____
MORTGAGOR

Name Printed: _____

_____
MORTGAGOR

Name Printed: _____

_____
MORTGAGOR

Name Printed: _____

_____
MORTGAGOR

STATE OF MICHIGAN )
COUNTY OF        ) ss.

On the _11_ day of _April_ , _2003_ before me personally came _David W. Kukuk_ _And Cynthia M. Kukuk, Husband And Wife_ to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same.

Notary Public _Dimiter Stefanov_

_Mcromb_ _____ County, Michigan

My Comm. Expires: ~~DIMITER STEFANOV NOTARY PUBLIC MACOMB CO, MI~~

**23. ACTUAL KNOWLEDGE.** For purposes of the Credit Documents, GMAC shall not be deemed to have actual knowledge of any fact until it actually receives notice as set forth in paragraph 11 or until it receives written notice thereof from a source GMAC reasonably believes to be reliable. The date of receipt shall be determined by reference to the "Received" date stamped on such written notice by GMAC or its agent.

**24. RELEASE.** To the extent permitted by law, for ourselves and our successors and assigns, we hereby release all homestead and dower rights and benefits.

**25. EXPENSES OF LITIGATION.** In any proceeding to enforce any remedy of GMAC under the Credit Documents there shall be allowed and included, to the extent permitted by law, as additional indebtedness in the judgment or decree, any court costs and reasonable expenses which may be paid or incurred by GMAC for attorneys; appraisers; documentary and expert evidence; stenographers; publication; surveys; abstracts of title; title searches; title insurance policies; Torrens certificates; and similar items which GMAC reasonably considers necessary in such proceeding or to evidence to bidders at any sale the true condition of the title to or value of the Property. Such expenses may be estimated to the extent they will be incurred after entry of the decree. In any foreclosure by advertisement, all expenses permitted by statute that GMAC incurs in protecting the Property, maintaining the lien of this Mortgage and foreclosing this Mortgage shall be included in the redemption price.

**26. CAPTIONS; GENDER; ETC.** The headings in this Mortgage are not to be used to interpret or define its provisions. In this Mortgage, the masculine gender includes the feminine and/or neuter, singular numbers include the plurals, and plurals include the singular.

**27.MERS.** Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage, but, if necessary to comply with local law or custom MERS (as nominee for GMAC and GMAC's successors and assigns) has the right to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including but not limited to, releasing and canceling this Mortgage.

_**(The Space Below This Line Has Been Left Blank Intentionally)**_

**Schedule A**

Tax Id Number:

Known as: 58691 North Avenue , Ray, Michigan 48096

MORTGAGE

Title No. _____
_____

TO

**THIS INSTRUMENT PREPARED BY**
Peter Hender, Esq.
GMAC Mortgage
100 Witmer Road
Horsham, PA  19044-0963

**Recorded At Request of**
GMAC Mortgage

**RETURN BY MAIL TO:**

GMAC Mortgage
Home Equity Funding
4 Walnut Grove Drive
Horsham, PA  19044-0963

<u>RESERVE THIS SPACE FOR USE OF RECORDING OFFICE</u>